<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HEATHER STRELEC,<br><br>            Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Civil Action No. 15-3010 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge**.**

      This matter comes before the Court upon the appeal of Heather Strelec ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Elias Feuer denying Plaintiff's application for disability insurance benefits ("DIBs") under the Social Security Act (the "Act"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.l(f). The Court has reviewed the parties' submissions. For the following reasons, the Court affirms the ALJ's decision.

**I.    BACKGROUND[1]**

      The Court writes for the parties who are familiar with the facts and procedural history of the case. The Court therefore specifically addresses in the discussion below only those facts relevant to the issues raised on appeal.

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 8.

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Additionally, under the Act, disability must be established by objective medical evidence. To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." 42 U.S.C. § 423(d)(5)(A). Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Factors to consider in determining how to weigh evidence from medical sources include: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

The "substantial evidence standard is a deferential standard of review." *Jones*, 364 F.3d at 503. The ALJ is required to "set forth the reasons for his decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 119 (3d Cir. 2000). But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to

2

weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)). Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

**III. THE FIVE STEP PROCESS AND THE ALJ'S DECISION**

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Third Circuit has summarized "the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. § 404.1520" as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

>In <u>step three</u>, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  20 C.F.R. § 404.1520(d).  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
>  <u>Step four</u> requires the ALJ to consider whether the claimant retains the residual functional capacity [("RFC")] to perform her past relevant work.  20 C.F.R. § 404.1520(d).  The claimant bears the burden of demonstrating an inability to return to her past relevant work.  *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).
>
>  If the claimant is unable to resume her former occupation, the evaluation moves to the <u>final step</u>.  At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f).  The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Jones*, 364 F.3d at 118-19 (formatting and emphasis added).  "The claimant bears the burden of proof for steps one, two, and four of this test.  The Commissioner bears the burden of proof for the last step."  *Sykes*, 228 F.3d at 263 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)).  Neither party bears the burden of proof at step three.  *Id.* at 263 n.2.

The ALJ engaged in the above five-step sequential evaluation and found: (Step 1) that Plaintiff "has not engaged in substantial gainful activity since April 21, 2009" (R. at 22); (Step 2) that Plaintiff "has the following severe impairments: obesity and depression" (*id.*); (Step 3) that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" (*id.* at 23); (RFC) that Plaintiff has the RFC "to perform light work . . . except she is limited to simple, routine and repetitive tasks, simple work related decisions with no contact with the general public an no jobs that require the individual to work in a team with coworkers" (*id.* at 24); and (Step 4) that Plaintiff "is able to perform her past work as a housekeeper [as] [t]his work does not require the performance of work-related activities

4

precluded by the claimants residual functional capacity" (*id.* at 28). A vocational expert testified that a position as a housekeeper is consistent with the RFC found to be applicable by the ALJ. (*Id.*) As an alternative, the ALJ also found that at Step 5, "there are jobs that exist in significant numbers in the national economy that the claimant also can perform. (*Id.* at 29.) The vocational expert testified that Plaintiff "could perform the requirements of representative occupations such as final assembler . . ., small hand packager . . ., and table worker . . . ." (*Id.*) For these reasons, the ALJ found Plaintiff not to be disabled. (*Id.*) Plaintiff appears to challenge the ALJ's step two, three, and RFC findings. (*See* Pl.'s Br. at 13-14.)

## IV. DISCUSSION

Prior to addressing Plaintiff's specific arguments, the Court notes that Plaintiff's brief fails to comply with Local Civil Rule 9.1. It contains no meaningful statement of the issues for review (*see* L. Civ. R. 9.1(e)(5)(A)), and it does not contain an argument section that is "divided into sections separately treating each issue (*see id.* 9.1(e)(5)(D)). In fact, without considering Plaintiff's argument regarding the consideration of new evidence, the argument section of her brief is 3 pages long. Although Plaintiff's arguments are therefore not clear and/or meaningfully analyzed, to avoid additional delay for re-briefing, and to not punish the Plaintiff for the errors of his counsel, the Court has addressed Plaintiff's arguments as best as it can understand them.

### A. Step Two

Plaintiff argues that she "has been diagnosed with bipolar disorder, obsessive compulsive disorder, anxiety disorder, including an initial diagnosis of bipolar disorder in 2005, and a steady and consistent increase in such diagnoses since 2009 going forward . . . . However, the October 2013 decision only resulted in a finding of Plaintiff suffering from bipolar disorder and obesity." (Pl.'s Br. at 13.) Plaintiff does not specify which additional impairments the ALJ should have found to be severe at step two.

5

A diagnosis alone does not support that an impairment is severe. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) ("In addition to the diagnoses, Salles was required to present evidence that these limitations *significantly* limited her ability to do basic work activities or impaired her capacity to cope with the mental demands of working.") (emphasis in original). Instead, "[u]nder the applicable regulations, an impairment is severe only if it significantly limits the claimant's physical or mental ability to do 'basic work activities,' i.e., physical 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling,' or mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Id.* at 144 (citing 20 C.F.R. § 404.1521(b)). It is Plaintiff's burden to establish that an impairment is severe at step two. *See Sykes*, 228 F.3d at 263. Additionally, even if the ALJ erred with respect to one of the impairments that he/she found to be non-severe, such error would be harmless as he/she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in his/her RFC finding. *See Salle*, 229 F. App'x at 145 n.2 ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

As noted above, Plaintiff has made no attempt to explain to the Court which of her additional diagnoses should have been found to be severe at step two and the basis of that belief. This is insufficient to meet her step two burden. However, even if there was an error at step two, as the ALJ found some impairments to be severe (including mental impairments) and proceeded

through the five step evaluation (including analyzing the effects of her mental impairments on her functional capacity (*see* R. at 23-28)), such error would be harmless.

### B. Step Three

Plaintiff argues that "[t]he decision below is incorrect as it ignored diagnosis from May 2013 that does satisfy the 'paragraph B' criteria [of Listings 12.04 and 12.06]." (Pl.'s Br. at 13-14.) Plaintiff further argues that the ALJ improperly discounted the opinions of Plaintiff's treating physicians. (*Id.* at 12-13.) For example, she argues that "[i]n May 2013, Dr. Ruiz diagnosed Plaintiff as suffering from bipolar disorder NOS, obsessive compulsive disorder, and anxiety disorder NOS, all giving rise to Plaintiff having a marked limitation in activities of daily living and maintaining social functioning, as well as marked losses in many areas related to work requirements, and that Plaintiff would have repeated episodes of deterioration or decompensation in a work environment." (*Id.* at 14.)

Listing 12.04 "Affective Disorders" is triggered when "the requirements in both A and B are satisfied, *or* when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04 (emphasis added). Listing 12.06 "Anxiety Related Disorders" is triggered when "the requirements in both A and B are satisfied, *or* when the requirements in both A and C are satisfied." *Id.*, 12.06 (emphasis added). The "B" criteria for both listings is the same. At least two of the following must be present:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

*Id.* Plaintiff appears to rely on Dr. Ruiz's opinion in arguing that the ALJ erred in failing to find that the "B" Criteria were met. The ALJ evaluated but did not credit this portion of Dr. Ruiz's opinion. The ALJ found:

> Treating psychiatrist, Dr. Ruiz, from St. Clare's Outpatient Behavioral Center, assessed in May 2013 that the claimant has marked limitations in activities of daily living, marked limitations in social functioning and often limitations in concentration, persistence or pace (Exhibit 16F). I accord this little weight to this assessment as it is not consistent with treatment records since April 2011 which indicate that the claimant's mental status has been stable with medication and treatment records show a global assessment of functioning (GAF) as 50 in April 2011 at the start of treatment (Exhibit 4F) consistent with the upper end of serious symptoms and increasing to GAF of 60 in October 2012 (Exhibit 14F) consistent with moderate symptoms (GAF 60). Dr. Ruiz's assessment indicates that she has current GAF of 50 and in the past a high GAF of 65 (Exhibit 16F, pg. l) consistent with mild symptoms. The claimant symptoms were stabilized with medication and an assessment of marked limitations is not consistent with treatment records or GAF scores.

(R. at 28.) The ALJ further noted that Dr. Ruiz's conclusions were internally inconsistent with his specific findings. The ALJ found:

> It is noted that Dr. Ruiz assessed that the claimant has no or mild loss in remembering, understanding and carrying out short, simple instructions; in maintaining regular attendance and being punctual; in adhering to standards of neatness and cleanliness; and in setting realistic goals. He assessed moderate loss in understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended i.e. 2-hour periods; and sustaining an ordinary routine without special supervision (Exhibit 16F, pgs. 3-4), these functional assessments are not consistent with his opinion of marked limitations.

(*Id.*) Instead, the ALJ gave more weight to the "psychological consultative examiner, Dr. Miller, who rated the claimant's GAF as 55 (Exhibit 9F) consistent with moderate symptoms." (*Id.*) The ALJ found Dr. Miller's assessment more consistent with the medical records as a whole as well as with Plaintiff's own reporting. The ALJ noted that

> [i]n activities of daily living, the claimant has moderate restriction. The claimant has alleged limitations due to bipolar depression and anxiety and she testified that her husband does cooking and cleaning. The evidence establishes that the claimant is the primary care giver for six children when her husband is working. She does get help from her father-in-law who lives with them, but she has reported that she does do cleaning, takes her son to therapy (autistic), handles her own personal care, does shop in stores and that she feeds, bathes and takes care of her children (Exhibits IE, 6E-7E, 9F).

8

> In social functioning, the claimant has moderate difficulties. The claimant has reported that she isolates from others and that she is sometimes irritable and yells at family members (Exhibits lE, 6E-7E). However, there is no indication of social abnormality. Examining and treating physicians have described her as cooperative (Exhibits 6F, 9F) and treating records from St. Clare's Hospital, Outpatient Behavioral Health, have not indicated any evidence of psychosis or social dysfunction (Exhibits 4F, 12F-14F, 17F).
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant has reported distractibility and decreased concentration. She has difficulty remembering to pay bills and to balance a checkbook (Exhibits 6E, 7E). Treatment records indicate that memory is good (Exhibits 4F, 8F14F) but psychological consultative examiner, Dr. Miller reported some difficulty with concentration testing (Exhibit 9F).
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

(*Id.* at 23-24.) The Court also notes that Dr. Ruiz stated that Plaintiff suffered from his identified limitations since 2008 (*see id.* at 497), even though she continued to work until 2009 (and to look for work until 2010) (*see id.* at 26).

While an ALJ must consider the opinions of treating physicians, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity" where it is not well supported or there is contradictory evidence. *Chandler*, 667 F.3d at 361 (alteration in original) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)); 20 C.F.R. § 404.1527(c)(2); *see also Coleman v. Comm'r. of Soc. Sec. Admin.*, 494 Fed App'x 252, 254 (3d Cir. Sept. 5, 2012) ("Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.") (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting

9

explanations are provided."); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Additionally, where state consultant opinions are more consistent with the medical records, it is appropriate for the ALJ to give them weight. *See Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration as well . . . '[b]ecause State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .") (quoting SSR 96–6p) (alteration in original).

The Court has reviewed the medical records referenced by the parties and finds that the ALJ's determination with regard to the "B" criteria was supported by substantial evidence. Dr. Ruiz's ultimate opinion with regard to Plaintiff's functional limitations is internally inconsistent and is not consistent with Plaintiff's records as a whole or her own reporting.

### C. RFC

Plaintiff argues that "Plaintiff must be found disabled for the purposes of the Social Security Act because the decisions below are against the weight of the evidence admitted by Plaintiff during the hearings below, her requests for review by the Appeals Council, and subsequent newly-obtained evidence." (Pl.'s Br. at 12.) Plaintiff primarily argues that the opinions of Plaintiff's treating physicians were ignored, that Plaintiff's subjective complaints were not adequately accounted for, and that new evidence makes clear that she continues to be disabled. (*Id.* at 12-15; Pl.'s Reply at 1, 4, 10-11.) Although it is not exactly clear which finding Plaintiff is attacking, the Court construes these arguments as an attack on the ALJ's RFC finding. Plaintiff

does not make a separate argument for how (if the RFC finding is accepted) that the Step Four finding was erroneous.

The RFC refers to the "most [a claimant] can still do despite [his/her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). It is "[t]he ALJ—not treating or examining physicians or State agency consultants—[who] must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361 (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

For the reasons discussed above (*see* Section IV.B.), the Court finds the ALJ's discounting of Dr. Ruiz's opinion to be supported by the record. Plaintiff also challenges the ALJ's discounting of Dr. Chervenak's opinion. (*See* Pl.'s Reply at 6.) Dr. Chervenak is a doctor of obstetrics and gynecology who opined that Plaintiff is "unable to function in a work environment," and "should receive full disability services." (R. at 469.) The ALJ was not required to give such an opinion significant weight. The regulations provide:

> Opinions on some issues, such as the examples that follow, are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
>
> (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.
>
> (2) Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

11

> (3) *We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section.*

20 C.F.R. 404.1527(d) (emphasis added). With respect to the more specific functional opinions of Dr. Chervenak, such as limitations on standing or walking, the ALJ noted that Dr. Chervenak's opinion was "based primarily on subjective complaints when [Plaintiff was] under his care for various pregnancies (six)." (R. at 27.) The ALJ further noted that such opinions were not consistent with the medical records as a whole. (*See id.*) Instead the ALJ placed more weight on the state consultant who recommended "a limited light [RFC]." (*See id.*) The ALJ recognized that Plaintiff suffered from severe mental impairments, but also recognized that Plaintiff's condition stabilizes with medication and that Plaintiff's activities undermine a finding of total disability. (*See id.* at 26.) The Court finds this conclusion to be supported by substantial evidence.

With respect to Plaintiff's argument that the ALJ failed to adequately consider her subjective complaints, such argument fails to take into account that the ALJ—in crediting Plaintiff's complaints—applied more social limitations than those recommended by the state psychological consultant. (*See id.* at 28.) What the ALJ did not do was fully credit Plaintiff's testimony, primarily because it conflicted with her earlier activity reporting. (*See id.* at 25-26.) For example, Plaintiff "testified that her husband does the cooking and cleaning and caring for the children." (*See id.* at 25.) But, in her functioning report of April 2011, Plaintiff described her daily activities as follows:

> I wake up, take my pills, wash the babies bottles [six children in total], get ready to take my son to his therapy on M, T, W, & Th, come home watch TV sometimes, clean, try to help my other kids with their homework, eat dinner, clean the kitchen, make bottles, play with kids, sit down for a while, give the kids a bath, & go to bed. When my son does not have therapy, I sit home. At times I go out to the Dr.'s, food shop, or if I have to my kid's functions.

(*Id.* at 177, 184.)  The ALJ also noted that Dr. Miller's psychiatric assessment in October 2011 noted that Plaintiff was "well groomed and appropriately dressed," that "[h]er gait, posture, and motor functioning were normal," that she "was pleasant and cooperative throughout the evaluation and she remained alert and coherent."  (*Id.* at 356.)  Dr. Miller rated Plaintiff's global assessment of functioning (GAF) at 55.  (*Id.* at 357.)

A subjective complaint alone cannot establish disability; objective medical evidence must be provided.  20 C.F.R. §§ 404.1528(a), 404.1529(a), 416.928(a); *see also Prokopick v. Comm'r of Soc. Sec,* 272 F. App'x. 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain; the ALJ must evaluate "the extent to which [a claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.") (quoting 20 C.F.R. § 404.1529(a)).  Additionally, after a review of the objective medical evidence, "[a]n ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so."  *Prokopick*, 272 F. App'x at 199; *see also Malloy v. Comm'r of Soc. Sec.,* 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony, regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)).  This is exactly what the ALJ did in this case.  He evaluated the medical evidence along with Plaintiff's subjective complaints and found that the Plaintiff's "statements concerning the intensity, persistence, and limiting effects" were "not entirely credible."  (R. at 25.)  He did however "giv[e] the benefit of the doubt to her [Plaintiff's] testimony" to the extent of applying greater social RFC limitations than recommended by the state consultant. (*Id.* at 28.)  For example, the ALJ limited Plaintiff's RFC to include only "simple work related decisions with no contact with the general public and no jobs that require the individual to work in a team with

coworkers." (*Id.* at 24.)  The Court finds that substantial evidence exists in the Record supporting the ALJ's RFC determination.

With respect to Plaintiff's argument that, at a minimum, the new evidence submitted by Plaintiff supports remand (*see, e.g.,* Pl.'s Br. at 16), the Court finds such argument to be without merit.  Plaintiff argues that "additional evidence not available during the time of the hearing, before Plaintiff was represented by present Counsel, establishes that Plaintiff *still suffers and is presently disabled*." (*Id.* (emphasis added).)  The new documents that Plaintiff seeks to rely on include treatment records (some, but not all, of which pre-date the ALJ decision), a vocational report of Brian Daly (dated after the ALJ opinion), a psychiatric opinion of Dr. Suckno (obtained approximately one and a half years after the ALJ decision), and reports of nurse Kelly Nussbaum (dated after the ALJ opinion).  (*Id.* at 17-20.)  Plaintiff submitted some, but not all, of these items to the Appeal Council.  (*See* ECF Nos. 11-3.)  The Appeals Council found that the May 2013 Medical Source Statement by Dr. Ruiz was "not new because it is an exact copy of the document found in Exhibit 16F." (R. at 2.)  The Appeal Council also found Mr. Daly's vocational report not to be new because it "is about a later time" than the period of alleged disability.  (*Id.*)

Extensive case law holds that "[n]o statutory provision authorizes the district court to make a decision on the substantial evidence standard based on new and material evidence never presented to the ALJ." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).  Thus, "[t]he correctness of [the ALJ's] decision depends on the evidence that was before him. He cannot be faulted for having failed to weigh evidence never presented to him." *Id.* at 592; *see also Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) ("Because [the] evidence was not before the ALJ, it cannot be used to argue that the ALJ's decision was not supported by 'substantial evidence.'") (citing *U.S. v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963).  Instead, when a claimant seeks to

rely on evidence that was not presented to the ALJ, the district court may remand the case when such evidence is (1) new, (2) material, and (3) "good cause exists for not presenting the evidence to the Commissioner." *Matthews*, 239 F.3d at 592–93. New evidence refers to material that was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finklestein*, 496 U.S. 617, 626 (1990). This new evidence must not be "merely cumulative." *Szubak v. Sec'y of HH*S, 745 F.2d 831, 833 (3d Cir. 1984). Evidence is material when it "relate[s] to the time period for which benefits were denied, and does not concern evidence of a later acquired disability, or of the subsequent deterioration of a previously non-disabling condition," and "there is a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Id.* Finally, the claimant must demonstrate good cause for failing to provide post-decisional evidence to the ALJ in a timely manner. *See id.* at 834; *see also Jones*, 954 F.2d at 128. Plaintiff bears the burden of demonstrating that the three requirements of post-decision evidence have been satisfied. *See* 42 U.S.C § 405(g); *Szubak*, 745 F.2d at 833 (noting that it is the claimant who must demonstrate that the requirements have been met.).

Applying these rules to the documents sought to be used by Plaintiff, the Court finds that such evidence is either not new, not material, and/or that no sufficient excuse has been submitted excusing prior discovery of the documents. Instead, plaintiff's new counsel appears to be attempting to rebut the ALJ's decision with new opinion evidence or assert disability after the period in question. With respect to medical records that existed prior to the ALJ hearing and decision, those materials are not new and Plaintiff has offered no reason why they could not have been previously obtained, even assuming they do not duplicate other documents in the Record. With respect to Mr. Daly's assessment, aside from the fact that it is dated over 7 months after the ALJ's decision, his report expressly relies on medical records that post-date the ALJ's decision,

and as such, his assessment is not material to the disability period at issue. *See Quade v. Astrue*, No. 07-3390, 2008 WL 3821764, at *13 (D.N.J. Aug. 12, 2008) ("Furthermore, although the vocational evaluation report by Edmond Provder considered evidence from the period under review, it also considered Dr. Benton's reports, all of which post-date the ALJ's decision. As such, Mr. Provder's analysis is based in part on information that is not under consideration here, so it fails to meet the materiality requirement.") (internal citation omitted). Ms. Nussbaum's records and opinions post-date the ALJ's decision, and likewise are not material.[2] Dr. Suckno's report is dated well over a year after the ALJ's decision, includes a review of the ALJ's decision (and thus appears to be a rebuttal to the ALJ's decision), and also relies on reports and records that post-date the ALJ's decision. As such, it also is not material. Furthermore, to the extent that Plaintiff seeks to rely on Mr. Daly, Dr. Suckno, and nurse Nussbaum's opinions that Plaintiff is unable to work, for the reasons discussed above, such ultimate conclusions are not required to be given any special significance. All of these reports (even though nominal reference to pre-decision functioning is made) read as an evaluation of Plaintiff's current functioning as of the date of the reports based, at least in part, on medical records that also post-date the ALJ's decision. As the Appeals Council instructed, if Plaintiff wishes to seek benefits for a disability after October 16, 2013, she must "apply again." (R. at 2.) Finally, Plaintiff has not offered any real explanation for why she could not have obtained such additional opinions prior to the decision based on the records for the relevant period. Mere hiring of new counsel does not provide such an excuse.

---

[2] The Court also notes that, as a nurse, Ms. Nussbaum is not an "acceptable medical source." The list of "acceptable medical sources to establish whether [a claimant] has a medically determinable impairment" includes licensed physicians, but does not include nurses or physical therapists. 20 C.F.R. § 404.1513(a); *Hatton v. Comm'r of Soc. Sec.*, 131 F. App'x 877, 878 (3d Cir. 2005). Though the ALJ "may also use evidence from other sources to show the severity of [a claimant's] impairments," this evidence is "entitled to consideration as additional evidence" but it is not "not entitled to controlling weight." 20 C.F.R § 404.1513(d)(1); *Hatton*, 131 F. App'x at 878.

## V. CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's decision. An appropriate Order follows this Opinion.

DATED: May 11, 2016

/s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE
